Thank you. You may be seated. Our next case is case number 417-0012. People of the State of Illinois v. Keith McIntosh. And for the appellant, we have Ms. Shaver. And for the appellee, Mr. Manchin. You may proceed, Counsel. May it please the Court, Counsel. Good afternoon. On behalf of the Office of the State Appellate Defender, my name is Moriah Shaver and I represent Mr. Keith McIntosh. In the order amending this case for the retrospective fitness hearing, this Court clearly explained that in addition to the procedural shortcomings at the 2013 restoration hearing, the problem acquired additional dimension when we consider that Dr. Coleman qualified his opinion by stating that Mr. McIntosh only marginally demonstrated an ability to choose among his legal options and to appreciate the implications of his legal choices. This Court explained in no uncertain terms that to say a defendant possesses those abilities only marginally is like saying that he is kind of fit and there is no such thing as kind of fit. As this Court explicitly reminded the trial court, a defendant is either fit, fit with medication, or unfit. Marginal fitness does not exist. Yet on remand, the trial court found that Mr. McIntosh was marginally fit by adopting Dr. Coleman's findings that he would struggle with making decisions answering questions and remaining in control. Well, except that the trial judge who was sensitive to having been reversed made any number of comments or explanations saying, I've dealt with this guy. He's before me in the courtroom. I've had the opportunity to visit with him. I've had an opportunity to evaluate him. And his response to my answers have been understandable, articulate. So then is he actually relying upon that psychiatric opinion alone or that definition or is he understanding I have to do more and I meant to do it at the And then he goes on and makes these other comments. Doesn't that satisfy what we directed him to do? Your Honor, under these circumstances, though the trial court did make the findings that Your Honor references, the trial court additionally multiple times said that it was concurring in Dr. Coleman's findings. Dr. Coleman's findings included concerns about Mr. McIntosh's ability to make decisions, to answer questions, and to stay focused and be in control. And he provided numerous examples that fall within those three categories. So by adopting Dr. Coleman's findings as part of the trial court's finding, even though it made statements regarding other observations that it had made, it didn't reject Dr. Coleman's findings and conclusions that found Mr. McIntosh to essentially be marginally unfit. If it was going to make a valid finding of fitness and say that it did not find that those things were present in Mr. McIntosh's courtroom behavior or any of his other observations, that maybe would have been adequate. But in this case, to make a valid finding of fitness, the trial court needed to not adopt Dr. Coleman's findings that essentially found him to be unfit. After Dr. Jekyll previously found Mr. McIntosh unfit, Dr. Coleman arrived at that troubling conclusion that Mr. McIntosh was marginally fit based on those concerns. Some examples of his concerns about Mr. McIntosh's ability to make decisions are that he only marginally demonstrated the ability to appreciate and make decisions regarding his legal choices and their implications. He might require reminders to consult with his attorney before he made decisions. And he might have trouble making reasoned choices. The examples that Dr. Coleman provided regarding Mr. McIntosh's inability to answer questions or concerns regarding that are that he had difficulty confining his statements to concise and clearly irrelevant responses. He might require direction that he confine his answers to yes or no responses. That essentially is only finding him fit for cross-examination. Mr. McIntosh wasn't able to answer all the questions regarding court functioning. Dr. Coleman didn't provide an explanation as to what it was that Mr. McIntosh did not understand. We don't know, based on the report, if Mr. McIntosh failed to understand the difference between a bench and jury trial or the consequences of being found guilty. And yet the trial court did adopt those findings and that reasoning. Regarding Mr. McIntosh's inability to stay focused and in control, Dr. Coleman specifically noted that Mr. McIntosh's medication did not appear to be working and his hypomanic symptoms did not appear to be fully controlled. Mr. McIntosh himself had stated to Dr. Coleman that he thought his medication wasn't working and he needed something stronger to remain in control. He often had to be redirected to the main topic during testing. One test could not be scored because Mr. McIntosh could not remain focused enough to respond to the hypotheticals posed by the test. That was the test that assessed his ability to understand his rights, the consequences of a plea, his ability to assist in his defense. The BSI personality test had to be administered verbally because Mr. McIntosh was unable to stay focused. And even with that altercation, he still had to be directed to remain on topic. Dr. Coleman diagnosed Mr. McIntosh as suffering from depression, anxiety with paranoid and obsessive compulsive features, PTSD, bipolar, antisocial personality disorder, and identified some substance abuse problems. He noted that Mr. McIntosh exhibited pressured speech and veered from one tangential thought to another. He had suicidal and racing thoughts and he had paranoid ideations. Also, his IQ was only 86.  All of Dr. Coleman's concerns come to fruition in the year that followed the evaluation. Regarding Dr. Coleman's concern that Mr. McIntosh would have trouble making decisions, trial court observed Mr. McIntosh make a spur-of-the-moment decision to waive his right to a jury trial while making a flippant comment about wasting taxpayer money. Regarding Mr. McIntosh's ability to answer questions that was identified by Dr. Coleman, Mr. McIntosh's answers to open-ended questions while he was testifying were frequently non-responsive. The trial court commented during both direct and cross-examination that Mr. McIntosh was not answering exactly what was being asked. Regarding Mr. McIntosh's ability to stay focused and in control, while he was testifying, he clearly had trouble focusing on what was being asked of him and that was part of the reason for those non-responsive answers. There was a booze hearing regarding some comments that Mr. McIntosh had made during the PSI. The trial court determined that he needed to be shackled at further proceedings after that hearing. At sentencing, Mr. McIntosh made a rambling and unfocused statement in elocution during which his paranoia was evident and he was seemingly unable to remain in control. And when he became increasingly agitated, he was forcibly removed from that hearing before he had even been sentenced. Because the trial court adopted Dr. Coleman's finding that Mr. McIntosh was only marginally fit, and because there was no such thing as marginal fitness, Mr. McIntosh has yet to be found fit. A qualified finding of marginal fitness does not constitute the level of confidence the due process requires. And because Mr. McIntosh was convicted and sentenced, while he remained unfit, he should be granted a new trial. If there are no further questions regarding that issue, will we intend to rest on the arguments presented in our briefs on the other issues unless there are questions about those issues? I don't see any at this time. Seeing none, we would ask this Court to grant Mr. McIntosh a new trial. Thank you. Mr. Manchin. May it please the Court, Counsel. In this case, the trial court, in full compliance with this Court's remand instruction, held a proper finding, a retrospective finding of fitness. There is no indication that the trial court here was unaware of the law. In fact, he commented on this Court's opinion, slapping him down for not having followed the procedures the first time, saying, we meant to do it that way, but I guess we did not follow the right procedures. He then said, based upon the doctor's opinion and upon my own observations of the defendant of the trial, I unequivocally find him to be fit, that he was fit for trial. Defendant, there is no basis upon which this Court should substitute a judgment for that of the trial court. Well, it would have provided greater clarity if he had commented upon the marginally competent comment that was made by, or that apparently comes from the doctor, and then we commented on that. A reference to the marginal could have been appropriate, but I don't think the fact that he doesn't select that single word out of the doctor's opinion to say, okay, because he finds it marginally unfit, the doctor responded to be unfit. If you read the doctor's report as a whole, and not just that one word, marginal, it's clear that the doctor found that despite some problems the defendant might have, he was in fact fit for trial. The doctor's report noted that the earlier finding of unfitness was not due to the defendant's lack of understanding the procedures, but due to the defendant's inability or refusal to cooperate with his then attorney. The doctor's report then stated that the defendant was now willing and able to cooperate with his current attorney, who the defendant stated that he thought was okay, based on what he knew of him so far. The doctor also said that there might be problems with the defendant proceeding, but that the defendant was fit. The standard of fitness is not the defendant is normal. The standard is just simply does the defendant understand the basic proceedings, and is the defendant able to cooperate and assist his attorney? If you look at his comportment at trial and before trial, it is clear that he was well aware of what was going on, knew the proceedings, the defendant knew his right to a speedy trial within 120 days, and got upset when the trial court refused to dismiss the charges on that basis. The defendant's conversation with the court regarding the waiver of jury trial showed that he was well aware of his rights, well aware of what was going on, and was making a rational decision to proceed with a bench trial. While the defendant suggests that that spurred the moment and showed that he was out of touch, I suggest that if you look at the content of what his conversation with the judge is, it is clear that he is aware of the proceedings and can assist his attorney. Mr. Manchin, do you agree with opposing counsel's representation that the trial court adopted the findings of Dr. Coleman? I don't think he adopted the findings per se. The trial court said, based upon the doctor's report and my own observation of the defendant, I find that the defendant is fit for trial. I don't know that that is a quote-unquote adoption of every single word in the doctor's report. He's just saying, based upon that report and based upon my own observations. Even accepting the defendant's argument that the doctor only found him marginally fit, the trial court could nevertheless find, based upon that report and upon his own observations of the defendant, throughout the course of the trial, that the defendant was in fact fit, rather than just, quote, marginally fit. So you can't divorce the one from the other, which is what the defendant seems to be trying to do, to say you have to focus solely on that one word, marginal. And some of the problems the doctor noted in his observations or testing the defendant to say, okay, because the doctor had a little trouble in doing the test, that must mean the defendant cannot proceed with a trial. And there's no correlation between the two, because despite the difficulties the doctor had, he was able to conduct the test and was able to draw conclusions based upon those tests, regarding the defendant's fitness for trial. And again, if you look at the totality, what we have here is a finding of unfitness, because the defendant could not cooperate or assist his attorney, his earlier attorney. The doctor has found that that no longer exists. There has never been a question raised as far as fitness, as far as the defendant's understanding of the procedures. In fact, the first fitness proceeding, there was a finding that he understood, but just couldn't assist. He understood the proceedings, but could not assist his attorney because of his then middle state. The record here shows the defendant is not the same person he was at the time of that prior hearing. This is a defendant whose conduct at trial, while not directly addressing questions sometimes, and at the sentencing hearing being belligerent to the court, shows that he was well aware of what was going on, and was able to assist his attorney. His outbursts in court do not show unfitness or trial, but rather show a defendant who is upset with his perception that he's being railroaded in these proceedings. So I submit that the trial court's finding was neither an abuse of discretion, nor a contrary to the manifest way of the evidence. That there's simply no basis upon which this court should substitute its judgment that that trial court could observe the defendant in the trial court and had a better way of determining, hey, is this guy just being a jerk, being unwilling to help, being unwilling to cooperate, or is this truly a case where the defendant is unable to cooperate, unable to assist? And I think that in this case, the most that could be said of the defendant is that at times, he was unwilling to cooperate with his counsel, or willing to abide with the court's instructions. But that is not the standard of fitness. If there are no further questions of this court on this issue or any other issues. I don't see any at this time. Any rebuttal, Ms. Shaver? Regarding Justice Connacht's question to Mr. Manchin about whether or not the court could have provided greater clarity if it had commented about the concerning findings that Dr. Coleman had made, in Gillen and Gibson, this court in the First District found that further inquiry was required based on the concerning findings and evaluations. In this case, because the only evidence presented was the evaluation, there was no other evidence. And yes, the court did make observations of his own, which we're certainly entitled to do. But the evidence presented was the concerning evaluation, raising issues about Mr. McIntosh being able to answer questions in court, to be able to communicate with his attorney. Someone who can't ask questions and answer questions can't effectively assist their attorney. And so, based on Gibson and Gillen, our position is that further inquiry was required. That there are three things a court can do when presented with a stipulation, according to Lewis, and one of them is to make further inquiry. And that should have happened here. Dr. Jekyll should have been called as a witness. Dr. Coleman should have been called as a witness. Mr. McIntosh himself could have been inquired of. Defense counsel could have been inquired of. There was additional information that needed to be done to determine whether or not those findings in Dr. Coleman's reports had manifested in a concerning way, or if things had worked out in an acceptable way. Additionally, Mr. McIntosh being aware of what was going on in the courtroom and understanding the proceedings isn't the only part of fitness. The other part of fitness is being able to assist counsel. There was no valid finding and no valid evidence presented that that issue that Dr. Jekyll had found him unfit based on had been resolved. If there are no further questions? We ask that Mr. McIntosh be granted a new trial. Thank you.